UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                              )
IN RE:                        )        CIVIL ACTION
                              )        NO. 19-10348-WGY
THOMAS R. BATEMAN and         )
KATHERINE E. BATEMAN,         )        CHAPTER 7 CASE
                              )        NO. 17-11217-FJB
                  Debtors.    )
_____)

_____
                              )
JOSEPH G. BUTLER,             )
Chapter 7 Trustee,            )
                              )
            Plaintiff,         )
                              )
        v.                    )        ADVERSARY PROCEEDING
                              )        NO. 19-01001
ROBERT E. BATEMAN,            )
LESLIE A. BATEMAN, and        )
TOWN OF SEBAGO, MAINE,        )
                              )
            Defendants.        )
_____)

YOUNG, D.J.                                 September 10, 2019

**MEMORANDUM OF DECISION**

## I.   INTRODUCTION

    The Town of Sebago, Maine ("Sebago") moved to dismiss a
bankruptcy trustee's complaint alleging that Sebago benefited
from a fraudulent transfer of real property.  Sebago's Mot.
Dismiss Verified Compl. Avoid & Recover Fraudulent Transfer &
Inj. Relief Incorporated Mem. Law. ("Mot. Dismiss"), ECF No. 18.
Sebago contended that the Court lacks subject matter

jurisdiction because Sebago received the real property through a state court judgment, which it asserts that a federal court cannot review.  Id. at 2.  Sebago also pressed that, were the Court to exercise jurisdiction, the statute of limitations and the bankruptcy debtors' release barred the complaint against it. Id.  Finally, Sebago suggested that the complaint does not include enough factual material to support fraudulent transfer claims.  Id. at 2-3.

The Court DENIED the motion to dismiss, ECF No. 30. Federal district courts lack jurisdiction when state court losers attempt to question the state court's decision in a later federal action, but here the bankruptcy trustee acts on behalf of creditors, who were not parties to the state court suit.  See Lance v. Dennis, 546 U.S. 459, 466 & n.2 (2006) (per curiam). Upon exercising jurisdiction, the Court concluded that the complaint states timely, unreleased, and plausible claims for relief.

## II.  BACKGROUND

### A.   Procedural History[1]

Thomas R. and Katherine E. Bateman (collectively, the "Batemans") filed a Chapter 11 bankruptcy petition in the United States Bankruptcy Court for the District of Massachusetts (the

---

[1] The Court adapts the procedural history from Butler v. Bateman (In re Bateman), 601 B.R. 700, 702-03 (D. Mass. 2019).

"Bankruptcy Court") on April 5, 2017.  Pet., <u>In re Bateman</u>, Ch. 7 Case No. 17–11217-FJB (Bankr. D. Mass.) ("<u>In re Bateman</u>"), ECF No. 1.  Pursuant to the United States Trustee and the Batemans' stipulation, the Bankruptcy Court converted the case into a Chapter 7 proceeding on February 5, 2018, Proceeding Mem./Order, <u>In re Bateman</u>, ECF No. 134, and appointed Joseph G. Butler ("Butler") as Chapter 7 Trustee the next day, Certificate of Appointment, <u>In re Bateman</u>, ECF No. 135.

On January 2, 2019, Butler filed a verified adversary complaint against the Batemans' son, their daughter-in-law, and Sebago.  Bankr. R. 7-91, Verified Adversary Compl. Avoid & Recover Fraudulent Transfer & Inj. Relief ("Compl."), ECF No. 14.[2]  The complaint alleges that the Batemans fraudulently transferred their Sebago vacation home to the Town of Sebago, which then fraudulently transferred the vacation home (the "Property") to their son and daughter-in-law.  Compl. 1.  On March 1, 2019, Sebago moved to dismiss the complaint in the Bankruptcy Court.  Mot. Dismiss 1.  Butler opposed Sebago's motion on March 22, 2019.  Bankr. R. 271-302, Pl.'s Opp'n

---

[2] The parties did not separately file in this Court all of the documents in the Bankruptcy Court record.  Accordingly, at the first citation, this memorandum of decision lists the page range of the discrete document in the bankruptcy record, then proceeds to refer to those documents by the page number native to that document.

Sebago's Mot. Dismiss Verified Compl. Avoid & Recover Fraudulent Transfer & Inj. Relief ("Opp'n"), ECF No. 14.

The Court granted the Batemans' son and daughter-in-law's motion to withdraw the reference on March 25, 2019.  ECF Nos. 8, 21.  After withdrawal of the reference, Sebago and Butler further briefed the motion to dismiss in this Court.  Sebago's Reply Trustee's Opp'n Mot. Dismiss Verified Compl. ("Reply"), ECF No. 19; Pl.'s Sur-Reply ("Surreply"), ECF No. 17.  The Court heard argument on the motion to dismiss on July 8, 2019, took the matter under advisement, and allowed Butler to file a supplemental memorandum.  See Electronic Clerk's Notes, ECF No. 26; Pl.'s Post-Hr'g Mem. Re Additional Authorities ("Suppl. Mem."), ECF No. 24.

The Court issued an order on September 4, 2019 denying the motion to dismiss, ECF No. 30.  This memorandum of decision explains that order.

### B.    Facts Alleged[3]

The Batemans acquired the Property, located on Sebago Lake, in 1980.  Compl. ¶¶ 7, 13.  In 2011, 2012, and 2013, Sebago recorded tax lien certificates amounting to about $56,000

---

[3] On a motion to dismiss, the Court accepts the complaint's version of the facts as true and augments it with extrinsic material in unusual circumstances.  See Sepúlveda-Villarini v. Department of Educ. of P.R., 628 F.3d 25, 30 (1st Cir. 2010); Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

against the Property in the local registry of deeds.  Compl.
¶¶ 9-11.  Though the Batemans held a joint tenancy in the
Property, the tax lien certificates lacked Katherine E.
Bateman's name on them.  Compl. ¶¶ 7, 9-11.  In February 2015,
Sebago instituted suit against the Batemans to cure or confirm
its rights to the Property in Cumberland County, Maine Superior
Court (the "Superior Court").  Compl. ¶ 12.  Although the
Batemans initially answered Sebago's complaint by raising
purported "defects" in the tax lien certificates, they did not
oppose Sebago's motion for summary judgment.  Compl. ¶¶ 13-14.

    After the Superior Court granted summary judgment placing
title in Sebago, the Batemans moved to reconsider on the ground
that they had not received notice of Sebago's motion.  Compl.
¶¶ 15-16.  The Superior Court denied the Batemans' motion on
June 15, 2015, and Sebago recorded the Superior Court's order in
the registry of deeds on July 23, 2015.  Compl. ¶¶ 17-19.

    In late August 2015, Sebago's Board of Selectmen agreed to
"explore [a] possible negotiated resolution in the dispute as
related to the recently tax acquired [Property]."  Compl. ¶ 20.
About a week later, Sebago's Board of Selectmen voted to allow
the Batemans' son and daughter-in-law (Sebago's codefendants in
this suit) to purchase the Property for $300,000 even though
Sebago had previously assessed the Property at $1,358,610.

Compl. ¶¶ 21-22.  Sebago reassessed the Property at $1,140,696 after completing the sale.  Compl. ¶ 26.

The Batemans declared bankruptcy on April 5, 2017.  Compl. ¶ 28.  Their initial bankruptcy filings did not report that they had transferred their interest in the Property to their son and daughter-in-law via Sebago.  Compl. ¶ 29.  Yet at their creditors' meeting, Thomas R. Bateman disclosed that he recorded a quitclaim deed of the Property to his son in the registry of deeds "[b]ecause, uh, negotiated with my son for him to purchase it back from the town."  Compl. ¶ 52.  Thomas R. Bateman also revealed at the meeting that an appraiser valued the Property at $1,800,000 in 2015.  Compl. ¶ 53.  After the creditors' meeting, the Batemans amended their bankruptcy filings to include the transfer of the Property.  Compl. ¶ 30.

## III. SUBJECT MATTER JURISDICTION

This Court has subject matter jurisdiction to entertain this action.  Sebago submits that this Court lacks subject matter jurisdiction because Butler's action amounts to an appeal of a prior state court judgment.  Mot. Dismiss 6-10.  The parties focus their dispute on whether a win for Butler would undo or interfere with the state court decision.  See Mot. Dismiss 6-10; Opp'n 7-10; see also Tyler v. Supreme Judicial Court of Mass., 914 F.3d 47, 51 (1st Cir. 2019) (observing that the Rooker-Feldman doctrine bars jurisdiction even when

plaintiff presents different arguments to federal court than
raised in state court (quoting Klimowicz v. Deutsche Bank Nat'l
Tr. Co., 907 F.3d 61, 66 (1st Cir. 2018))).

Although the parties overlooked the issue in their briefs,
Butler argued at the hearing that he is neither formally nor
functionally a state court loser.  See Suppl. Mem. 1 (citing
Ingalls v. Erlewine (In re Erlewine), 349 F.3d 205 (5th Cir.
2003)); Lance, 546 U.S. at 466 & n.2.  The Court agrees with
Butler.  As bankruptcy trustee, Butler brings this fraudulent
transfer suit on behalf of the Batemans' creditors, not the
Batemans.  See 11 U.S.C. § 544(b); see also 3 Collier on
Bankruptcy ¶ 323.03; 5 Collier on Bankruptcy ¶ 548.02(1)(b).
Ergo, this Court has authority to rule on Butler's claims.

    **A.   Legal Framework**

Section 1257 of chapter 28 of the United States Code to
vest federal appellate jurisdiction over state court judgments
exclusively in the Supreme Court.  See District of Columbia
Court of Appeals v. Feldman, 460 U.S. 462, 482 (1983); Rooker v.
Fidelity Tr. Co., 263 U.S. 413, 415-16 (1923).  As a
consequence, federal district courts lack jurisdiction to
"consider cases brought by state-court losers complaining of
injuries caused by state-court judgments rendered before the
district court proceedings commenced and inviting district court

review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005).

Although this doctrine, which the Supreme Court refers to as "Rooker-Feldman," appears similar to claim and issue preclusion, the Supreme Court has emphasized that it "is not simply preclusion by another name" and "applies only in 'limited circumstances.'" Lance, 546 U.S. at 466 (quoting Exxon, 544 U.S. at 291). In Lance, the Supreme Court held that state privity rules do not apply in the Rooker-Feldman context but did not reach "whether there are any circumstances, however limited, in which Rooker-Feldman may be applied against a party not named in an earlier state proceeding." Id. at 466 & n.2. The Supreme Court speculated that Rooker-Feldman might apply "where an estate takes a de facto appeal in a district court of an earlier state decision involving the decedent." Id.; see also Goldsmith v. Massad (In re Fiorillo), 494 B.R. 119, 142 (Bankr. D. Mass. 2013) (Hoffman, Bankr. J.) (ruling that whether Rooker-Feldman forbids jurisdiction over bankruptcy trustee's claim depends on whose behalf that the trustee sues). Still, the Court has not found -- and Sebago does not identify -- an instance in which either the Supreme Court or the First Circuit have used Rooker-Feldman to dismiss the claims of a nonparty to a state court suit.

Rooker-Feldman extends further than preclusion in at least one respect as it prohibits federal district court jurisdiction regardless of the "issues actually litigated in the prior state-court proceedings and the issues proffered in the subsequent federal suit." Tyler, 914 F.3d at 51 (quoting Klimowicz, 907 F.3d at 66). Conversely, if the plaintiff raised the "same or related question" in the state court suit, a federal district court has jurisdiction over his later case if it involves an independent claim. See Skinner v. Switzer, 562 U.S. 521, 532 (2011) (quoting Exxon, 544 U.S. at 292-93). A claim is independent, however, only when a favorable ruling on it will not "undo[] the prior state judgment." Tyler, 914 F.3d at 51 (quoting Maymó-Meléndez v. Álvarez-Ramírez, 364 F.3d 27, 34 (1st Cir. 2004)).

At bottom, Rooker-Feldman deprives federal district courts of jurisdiction where the plaintiff (1) lost in state court, see Lance, 546 U.S. at 466, and (2) seeks to undo the state court judgment, see Maymó-Meléndez, 364 F.3d at 34.

**B.  Analysis**

The Court declined to dismiss the case on Rooker-Feldman grounds because Butler brings his suit in the Batemans' creditors' stead, not the Batemans'. See Lance, 546 U.S. at 466. In so ruling, the Court has no need to weigh in on whether

success for Butler would undo the state court judgment.  See Maymó-Meléndez, 364 F.3d at 34.

The Court assumes, without deciding, that the exception that the Supreme Court only hinted might exist in Lance actually does.  See Lance, 546 U.S. at 466 n.2.  The Supreme Court only contemplated that exception capturing successors in interest to state court losers.  See id.  Here, the creditors in whose shoes Butler stands are not "state-court losers."  See Exxon, 544 U.S. at 284.  The Court thus follows the Goldsmith court and rules that, under the putative Lance exception, a bankruptcy trustee constitutes a state court loser only when he brings a claim in the stead of that loser.  See Goldsmith, 494 B.R. at 142.

Sebago does not assert that Butler stands in the Batemans' shoes.  Nor could it.  Butler relies on portions of the Uniform Fraudulent Transfer Act and federal bankruptcy code that inure to the benefit of creditors, not harmed transferors.  See Compl. 9-17 (citing 11 U.S.C. §§ 544, 548, 550; Mass. Gen. Laws ch. 109A, §§ 5, 6, & 9; Me. Rev. Stat. tit. 14, § 3571); 3 Collier on Bankruptcy ¶ 323.03 (observing that when trustee sues under his avoiding powers, he "stands in the shoes of the creditors" (quoting Logan v. JKV Real Estate Servs. (In re Bogdan), 414 F.3d 507, 514 (4th Cir. 2005) (alteration omitted))); 5 Collier on Bankruptcy ¶ 548.02(1)(b) (explaining

that trustee can only bring suit under 11 U.S.C. § 548 if a creditor will benefit (collecting cases)).

Also, the Court observes that the Superior Court entered judgment on Sebago's suit against the Batemans, not on a quiet title action against the Property itself.  Bankr. R. 43, Mot. Dismiss, Ex. F., Superior Court Order (entering judgment for Sebago on "its Complaint for Equitable Relief Pursuant to 36 M.R.S.A. § 946 and, in the Alternative, for Declaratory Judgment") ("Superior Court Order"), ECF No. 14; compare Me. Rev. Stat. tit. 36, § 946 (authorizing municipalities to "maintain an action for equitable relief against any and all persons who claim or may claim some right, title or interest in the premises adverse to the estate of such municipality") with Me. Rev. Stat. tit. 14, § 6657 (describing quiet title actions as "against the land" and explaining that court decrees resulting from such actions "operate directly on the land").  Since Sebago sued only the Batemans, and the Batemans' creditors did not intervene, see Bankr. R. 40-41, Mot. Dismiss, Ex. E, Docket, ECF No. 14, Butler may bring this federal action.

## IV.  FAILURE TO STATE A CLAIM

Butler's complaint states a plausible entitlement to relief.  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Sebago argues that the statute of limitations bars Butler's suit and that Butler must comply with the Batemans'

release of Sebago from litigation relating to the transfer.
Mot. Dismiss 10-14.  Sebago additionally asserts that the
complaint does not contain enough factual information to support
a federal or state fraudulent transfer claim.  Id. at 14-20.
Not one of Sebago's arguments warrants dismissal of any of
Butler's claims against it, and thus the Court DENIED the motion
to dismiss.

### A.   Legal Framework

A complaint must provide "enough facts to state a claim to
relief that is plausible on its face" to survive a motion to
dismiss under Federal Rule of Civil Procedure 12(b)(6).  Bell
Atl. Corp., 550 U.S. at 570.  The Court assumes the truth of the
facts in the complaint and construes them in the plaintiff's
favor.  Sepúlveda-Villarini v. Department of Educ. of P.R., 628
F.3d 25, 30 (1st Cir. 2010).  Although courts generally consider
only the complaint at this stage, they make exceptions "for
documents the authenticity of which are not disputed by the
parties; for official public records; for documents central to
plaintiff['s] claim; [and] for documents sufficiently referred
to in the complaint."  Watterson v. Page, 987 F.2d 1, 3 (1st
Cir. 1993).

The Court accordingly denies motions to dismiss where the
"facts pled permit a 'reasonable inference,' defined as one that
is 'plausible, not . . . merely conceivable,' that the defendant

is liable." <u>Aragao</u> v. <u>Mortgage Elec. Registration Sys., Inc.</u>, 22 F. Supp. 3d 133, 137 (D. Mass. 2014) (quoting <u>Grajales</u> v. <u>Puerto Rico Ports Auth.</u>, 682 F.3d 40, 45 (1st Cir. 2012)).[4]  The Court may dismiss a claim if the statute of limitations forecloses relief on it only when the motion to dismiss record reveals "with certitude" that the claim is time-barred.  <u>Rodi</u> v. <u>Southern New Eng. Sch. Of Law</u>, 389 F.3d 5, 12 (1st Cir. 2004).

**B.  Analysis**

The Court DENIED Sebago's motion to dismiss for failure to state a claim.  The Batemans completed the transfer of their interest in the Property in July 2015, so the transfer occurred before the limitations periods lapsed.  <u>See</u> Compl. ¶ 19; 11 U.S.C. § 548(a)(1).  Nor can Sebago succeed in charging Butler with the Batemans' release of claims with respect to the transfer because Butler sues on behalf of the Batemans' creditors, not the Batemans.  <u>See</u> 11 U.S.C. § 544(b); 3 <u>Collier on Bankruptcy</u> ¶ 323.03; 5 <u>Collier on Bankruptcy</u> ¶ 548.02(1)(b).  Finally, Butler states claims for actual and constructive fraudulent transfer.  <u>See</u> 11 U.S.C. § 548(a)(1); Mass. Gen. Laws ch. 109A, § 5; Me. Rev. Stat. tit. 14, § 3575.

---

[4] Although Sebago says Butler has not pled fraudulent transfer claims, Sebago does not request the Court to apply Federal Rule of Civil Procedure 9(b) to test Butler's allegations of fraud.  <u>See generally</u> Mot. Dismiss 14-20.

## 1.    Statute of Limitations

The statute of limitations does not bar Butler's suit.  The parties agree that a two-year limitations period applies to Butler's federal fraudulent transfer claim, count 1.  Compare Mot. Dismiss 10 with Opp'n 13.  They disagree whether Butler's state law claims, count 2, are subject to the state law limitations period or the limitations period for Internal Revenue Service collections.  See Surreply 1-3 (raising, for the first time, the Internal Revenue Service's ten-year limitations period).

The Court need not resolve which statute of limitations governs Butler's state law claims because Butler brought his action within the harsher federal limitations period.  See 11 U.S.C. § 548(a)(1); Town of Pownal v. Anderson, 728 A.2d 1254, 1258-59 & n.5 (Me. 1999).  Therefore, all of Butler's claims are timely.

The Batemans' transfer occurred, at the earliest, on July 23, 2015.  Compl. ¶ 19.  Federal law dictates that a bankruptcy trustee may receive relief from a fraudulent transfer only if the fraudulent transfer occurred within two years of the bankruptcy petition date.  11 U.S.C. § 548(a)(1).  Since the Batemans filed their petition on April 5, 2017, Butler may avoid only fraudulent transfers that happened after April 5, 2015.  See id.; Compl. ¶ 28.  The parties contest whether the Batemans

transferred the Property when they missed their opportunity to
redeem the tax lien on the Property or when Sebago recorded the
Superior Court order curing the defect in Sebago's tax lien.
Mot. Dismiss 10-13; Opp'n ¶¶ 34-41.  The Court holds that the
claims accrued when Sebago recorded its judgment because Maine
law provides that that judgment "when recorded in the registry
of deeds for the county or district where the real estate lies
shall have the effect of a deed of quitclaim of the premises
involved in the action from all the defendants named or
described therein to the plaintiff."  See Me. Rev. Stat. tit.
36, § 946.

### a.   Maine Municipal Tax Foreclosure Law

Section 942 of chapter 36 of the Maine Revised Statutes
permits town tax authorities to place tax lien mortgages on real
property after providing notice to tax debtors.  Section 943 of
the same chapter allows towns to foreclose automatically on a
tax lien mortgage 18 months after the town filed the lien in the
registry of deeds if the tax debtors have not yet paid off the
mortgage.  If the municipal tax debtors did not have actual
notice of the tax lien mortgage -- and even if the town complied
with section 942's notice requirements -- section 943 gives the
debtors the right to redeem their property within three months
of receiving actual notice of the lien.  As a result, once the
statutory redemption period under section 943 lapses without

satisfaction of the debt, the tax debtors lose their interests in the liened property.  Ocwen Fed. Bank, FSB v. Gile, 777 A.2d 275, 282 (Me. 2001).

Because Maine requires "strict compliance with statutory requirements to divest property owners of their titles for nonpayment of taxes," Maine municipalities must ensure that each record owner of a property receives notice pursuant to section 942 in order validly to issue a tax lien.  See Blaney v. Inhabitants of Shapleigh, 455 A.2d 1381, 1387 (Me. 1983).  If the town does not follow section 942's procedures, however, the town may cure that procedural defect by giving the record owner actual notice per section 943.  Nevertheless, the absence of a record owner's name from the tax lien certificate filed in the registry of deeds invalidates the lien (at least with respect to that joint owner).  Town of Pownal, 728 A.2d at 1258-59 & n.5 (voiding automatic foreclosure and tax lien on property when record owner's name was missing on lien certificate).

> **b.    The Complaint Alleges that Sebago Needed to Record the Superior Court Order to Finalize the Foreclosure**

Since the complaint alleges that Sebago's initial attempts to foreclose did not transfer the Property, the Batemans did not lose their stake in it until Sebago recorded the Superior Court Order.  See Compl. ¶¶ 33-41.  The complaint alleges that Sebago submitted invalid tax lien certificates to the registry of deeds

because each certificate omitted Katherine E. Bateman.  Compl.
¶¶ 33-34 (citing <u>Town of Pownal</u>, 728 A.2d at 1258-59).  Sebago
successfully sued the Batemans to clarify the ownership of the
Property in Superior Court, citing section 946 of chapter 36 of
the Maine Revised Statutes and Maine's declaratory judgment
rules.  Compl. ¶¶ 12-19.  The complaint thus asserts that the
transfer occurred at the earliest when Sebago recorded the
Superior Court Order assigning it title to the Property.  Compl.
¶ 39 (citing Me. Rev. Stat. tit. 36, § 946(2)).

Sebago offers two ripostes to this logic.  First, Sebago
suggests that the Superior Court action merely confirmed the
transfer and did not cause a new transfer.  Mot. Dismiss 11;
Reply 6-8.  Second, to the extent that it conveyed the Property
again, Sebago submits that the Superior Court action only
conveyed Katherine E. Bateman's interest in it to Sebago.  Mot.
Dismiss 12.

Butler has the better of both arguments.  First, Butler
points out that section 946 not only describes the clarifying
action as one "to establish and confirm . . . title to the
premises described in the complaint against all defendants named
or described within" but also provides that a prevailing
plaintiff receive a decree with "the effect of a deed of
quitclaim of the premises" when recorded in the registry of
deeds.  Surreply 4.  In contrast, as the Court notes in its

Rooker-Feldman discussion, Maine's generally applicable quiet
title statute is "a proceeding in rem against the land."   See
Me. Rev. Stat. tit. 14, § 6657; see also id. §§ 6651-6652.
Further, quiet title actions under Maine's generally applicable
statute and declaratory judgment actions differ only as matter
of procedure; thus, both actions result in a declaration of
rights, not a transfer.   See Welch v. State, 853 A.2d 214, 216
n.3 (Me. 2004).

Sebago seems to respond that it received a declaratory
judgment from the Superior Court, not relief pursuant to section
946(2).   Reply 6-7 (citing Colquhoun v. Webber, 684 A.2d 405,
412 (Me. 1996); Town of Carthage v. Friends of Me.'s Mountains,
134 A.3d 876, 880 (Me. 2016)).[5]   The Superior Court Order,
however, does not explain whether it granted section 946's
equitable relief or a declaration of Sebago's rights.   See
Superior Court Order.   In any event, after the Superior Court
issued the order, Sebago recorded that order as section 946(2)
demands.   Compl. ¶ 19.   Moreover, as opposed to the more general

---

[5] Aside from Town of Carthage, Sebago fails to cite cases
addressing actions to cure a faulty municipal tax lien
foreclosure in replying to Butler's interpretation of the effect
of a favorable ruling under section 946.   See Reply 6-7.   Town
of Carthage itself turned on the claimants' failure to challenge
infirmities within the limitations period for challenging
foreclosures.   134 A.3d at 882 ("Ultimately, to the extent that
any infirmity did exist regarding the 1905 tax sale, any
individuals claiming title to the land forfeited any challenge
to the sale by their failure to act.").

declaratory judgment statute, section 946(2) establishes the specific remedy for Sebago's alleged foreclosure error.  See Ziegler v. American Maize-Prods. Co., 658 A.2d 219, 222 (Me. 1995) (holding that "specific statutory provisions take precedence over general provisions"); Collins v. Greater Atl. Mortg. Corp. (In re Lazarus), 478 F.3d 12, 18–19 (1st Cir. 2007) (same).  Therefore, the complaint alleges that Sebago caused a new real estate transfer when it recorded the Superior Court's decree.

As for Sebago's second rebuttal, the Court predicts that the Maine Law Court would hold that a tax lien certificate that did not list all record owners was invalid.  See Town of Pownal, 728 A.2d at 1258-59.  Though the Law Court in Town of Pownal reserved ruling on whether a lien that is void as to one joint tenant may be valid as to another properly notified and named in the tax lien certificate, see id. at 1258 n.5, it has reasoned that the "[f]ailure to follow strictly the statutorily delineated requirements will destroy the validity of the tax lien certificate and will prevent the town from acquiring title under the tax lien foreclosure procedures," Blaney, 455 A.2d at 1387 (citing Arsenault v. Inhabitants of Town of Roxbury, 275 A.2d 598, 599–600 (Me. 1971)); see also Cary v. Harrington, 534 A.2d 355, 358 (Me. 1987) (ruling town's mix-up of record owner's first and last names on the tax lien certificate voided the lien

because it would prevent a title examiner from locating the lien using the record owner's last name).  In any event, the Law Court later characterized Town of Pownal as "holding that a municipality's failure to list all record owners on the face of the tax lien rendered the purported lien invalid."  DiVeto v. Kjellgren, 861 A.2d 618, 624 (Me. 2004).  Sebago thus did not have valid title until it succeeded in its curative action in the Superior Court and recorded the Superior Court Order.

Consequently, the facts before this Court do not show "with certitude" that the Batemans transferred the Property outside of the two-year look-back window.  See Rodi, 389 F.3d at 12, 17-19. Because the Batemans filed their bankruptcy petition on April 5, 2017 and Sebago recorded the Superior Court Order on July 23, 2015, the complaint alleges that Butler's claims fall within the federal bankruptcy look-back and the state limitations period.[6] See Compl. ¶¶ 19, 28.

### 2.  Release

Assuming the Court can consider the Batemans' release, the release does not warrant dismissal.  Sebago insists that Butler must honor the Batemans' release of Sebago that the Batemans

---

[6] Butler filed this action on January 2, 2019, so -- assuming a four-year state limitations period applies -- his state claims must have accrued after January 2, 2015.  See Compl. 1; Mot. Dismiss 12-13 (citing Mass. Gen. Laws ch. 109A, § 10).

signed "in connection with the Town's conveyance of the Property
to Robert E. Bateman and Leslie A. Bateman."   Bankr. R. 34, Mot.
Dismiss, Ex. B, Release Agreement, ECF No. 14.   But Butler
correctly points out that he is prosecuting the claim on behalf
of the Batemans' creditors, not the Batemans.   See Opp'n ¶¶ 44–
45 (citing DeGiacomo v. Tobins (In re Upper Crust, LLC), 554
B.R. 23, 32–34 (Bankr. D. Mass. 2016) (Feeney, Bankr. J.)); see
also 11 U.S.C. § 544(b); 3 Collier on Bankruptcy ¶ 323.03; 5
Collier on Bankruptcy ¶ 548.02(1)(b).   Ergo, the Batemans'
release does not run against Butler in this suit.

### 3.   Sufficiency of Fraudulent Transfer Allegations

Butler alleges both actual and constructive fraudulent
transfer.   Sebago reads the complaint to lack sufficient
allegations for either basis.   Mot. Dismiss 14–20.   With respect
to actual fraud, Sebago says the complaint omits facts
sufficient to establish "any wrongful intent, scheme, or fraud."
Mot. Dismiss 15.   As for constructive fraud, Sebago contends
that the complaint does not provide a basis for concluding that
the Batemans did not receive reasonably equivalent value given
Maine's statutory scheme or that the Batemans were insolvent (or
were about to become insolvent) when the transfer occurred.
Mot. Dismiss 15–16.

## a.   Actual Fraud[7]

Butler has alleged an actual fraud theory of fraudulent transfer.  Compl. ¶¶ 60, 66, 76, 77, 83, 85.  Section 548(a)(1)(A) of chapter 11 of the United States Code allows a bankruptcy trustee to avoid transfers that the debtor made "with actual intent to hinder, delay, or defraud" creditors.  See also Mass. Gen. Laws ch. 109A, § 5(a)(1) (same); Me. Rev. Stat. tit. 14, § 3575(1)(A) (same).  "[C]ourts applying Bankruptcy Code § 548(a)(1) frequently infer fraudulent intent from the circumstances surrounding the transfer" given the impracticability of showing "actual intent to hinder, delay or defraud creditors."  Max Sugarman Funeral Home, Inc. v. A.D.B. Inv'rs, 926 F.2d 1248, 1254 (1st Cir. 1991).  The First Circuit has thus identified five "more common circumstantial indicia of fraudulent intent at the time of the transfer":

> (1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and, after the transfer, (5) retention by the debtor of the property involved in the putative transfer.

Id. (citations omitted).  "The presence of a single badge of fraud may spur mere suspicion, the confluence of several can

---

[7] The parties incorporate their arguments about federal law with respect to the state law claims because the statutes are similar.  See Mot. Dismiss 19-20; Opp'n 19.

constitute conclusive evidence of an actual intent to defraud,
absent 'significantly clear' evidence of a legitimate
supervening purpose." Id. at 1254-55 (citations omitted).

Butler asserts that the complaint establishes the first
indicator (pending litigation) and the third (unmanageable
indebtedness). Opp'n 15-16. He also suggests that Sebago's
choice to assume ownership of the Property without engaging real
estate professionals to investigate a public sale connotes
malintent. Id. at 15. Moreover, Butler contends that Thomas E.
Bateman's statement at the creditors' meeting that he
"negotiated with my son for him to purchase [the Property] back
from the town" evidences a scheme to defraud. Id. Further,
Butler points out that the Batemans failed to raise the defense
of the invalid lien certificate in the Superior Court
proceedings. Id. at 15-16.

Butler's allegations suffice at this stage. Read together,
Butler tells a story of the Batemans falling on their sword in
the Superior Court litigation with Sebago so as to launder a
transfer of the Property to their son and daughter-in-law.
Those allegations allow discovery on the actual fraud claim.

### b. Constructive Fraud

The complaint also contains enough factual allegations for
the Court to conclude that Butler could succeed on a
constructive fraud theory. Butler posits that the Batemans

"received less than a reasonably equivalent value in exchange"
for the Property from Sebago and they were "insolvent on the
date that such transfer was made or such obligation was
incurred, or became insolvent as a result of such transfer or
obligation."  See 11 U.S.C. § 548(b)(i)-(ii); see also Mass.
Gen. Laws ch. 109A, § 5(a)(2) (similar); Me. Rev. Stat. tit. 14,
§ 3575(1)(B) (similar); Compl. ¶¶ 21-22, 42-44, 61, 67; Opp'n
17-18.

Sebago disagrees on the grounds that Maine statutes
authorized its foreclosure and that Butler failed to assert
enough facts to show the Batemans' insolvency.  Mot. Dismiss 16-
18; Reply 8-9.  Neither ground moves the Court.  For one,
Butler's theory depends on the premise that Sebago had no right
to foreclose when it did because the tax lien certificates were
void but the Batemans allowed the foreclosure so as to
facilitate transferring the Property to their relatives for a
song.  Opp'n 17-18.  Indeed, Butler states that after receiving
the Property, which Sebago had previously assessed at more than
$1,300,000,[8] Sebago sold it for only $300,000.  Id.  Even if the
Property were worth only $300,000, Sebago foreclosed on all of
it to satisfy a tax debt of about $56,000.  Id.  Though Maine

---

[8] The complaint also recounts a statement from Thomas R.
Bateman that "the Maine Property was appraised for $1,800,000.00
in 2015."  Compl. ¶ 52.

authorized the automatic foreclosure process, Maine did not approve the allegedly collusive settlement of that process. Therefore, Butler's complaint alleges that the Batemans did not receive reasonably equivalent value for the Property.

Additionally, Butler's complaint asserts that the Batemans were insolvent at the time of the transfer.  True, some of the complaint's allegations are conclusory, and the Court assumes that it cannot rely on the document that Butler attaches to his opposition purporting to show the Bateman's financial situations years after the transfer.  Opp'n 18-19 & Ex. A, Insolvency Mem. Butler's complaint nonetheless pleads enough facts to support his conclusory allegations because it alleges that the Batemans transferred property worth at least $300,000 for immediate relief from a $56,000 tax debt.  See Compl. ¶¶ 22-23.  Since the Court construes the facts favorably to Butler at this stage, it infers that the Batemans took such an extreme lowball offer -- notwithstanding a defense to foreclosure -- because they were insolvent.  See Sepúlveda-Villarini, 628 F.3d at 30.

## V.    CONCLUSION

For the foregoing reasons, this Court DENIED the motion to dismiss, ECF No. 30.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE